## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CIPRIANO MARTINEZ and PATRICIO DONES, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>UTILIMAP CORP.,<br><br>   Defendant. | Case No. 3:14-CV-310-JPG-DGW |

### PLAINTIFFS' RESPONSE TO UTILIMAP'S MOTION TO COMPEL ARBITRATION

**1.     Introduction.**

Over the course of more than a year of litigation and several months of discovery, Utilimap "waited to see" how litigation would go. It (1) received answers and responsive documents to almost 200 written discovery requests propounded on Plaintiffs; (2) took Plaintiffs' depositions; (3) participated in the exchange of hundreds of pages of payroll and employment documents; and (4) made two unsuccessful attempts to dispose of the case. Utilimap's first attempt was a motion to dismiss that it lost. Its second was to force Dones, who cannot legally travel to the U.S., to appear in St. Louis for his deposition and seek a Rule 41(b) dismissal for failure to appear. But when that didn't work because the Court allowed his deposition by videoconference in Monterrey, Mexico, Utilimap got desperate. Prompted by its lawyer, it went to the "physical files in storage" to dig up arbitration agreements, even though Judge Sim Lake of the Southern District of Texas held them to be unenforceable over three years ago.

**2.     Utilimap's Arbitration Agreement Has Been Held Unenforceable By Judge Sim Lake.**

An arbitration clause is illusory and therefore unenforceable if one party can avoid its promise to arbitrate by amending or eliminating its agreement to do so. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012). Judge Sim Lake of the Southern District of Texas held Utilimap's arbitration agreement

1

to be unenforceable under this rule in *Herrera v. Utilimap Corp., L.P.*, No. 4:11-cv-3851 (S.D. Tex.). His reasons and analysis are attached as Exhibit 1 (hearing transcript) and Exhibit 2 (order denying arbitration).

Judge Lake found Utilimap's arbitration agreement unenforceable because it is part of Utilimap's employment handbook – a document that can be modified at any time at the sole discretion of Utilimap's President. *See* Exhibit 1, at p. 5, l. 5 – p. 6. l. 8; Exhibit 3 ("the *Herrera* Handbook").

Specifically, the *Herrera* Handbook says:

> As the company grows, the handbook will be reviewed periodically and adapted to the changing needs of the company and its employees. All changes must be authorized and approved by the company president. You will be notified of any change in the policies or programs described in this handbook.

*See* Exhibit 3, at p. 5; Exhibit 1 at p. 5, l. 13-18. The employment handbook at issue here contains this identical language. *See* Doc. 51-1 ("the *Martinez* Handbook"), at p. 5, l. 14-18.[1]

The *Herrera* and *Martinez* Handbooks also say:

> I have received and read a copy of the Utilimap Corporation's Employee Handbook which contains Utilimap Corporation's policy related to HIPAA compliance. I agree to abide by all of Utilimap Corporation policies, including the policy related to HIPAA. **I understand that the policies and benefits described in it are subject to change at the sole discretion of Utilimap Corporation's President at any time.**

*See* Exhibit 3, at p. 51 (emphasis added); Doc. 51-1, at p. 52 (emphasis added).

The handbooks are also identical in that they specifically incorporate Utilimap's arbitration agreement:

> The company has adopted an arbitration policy to resolve all employment disputes between employees and the company. The company believes that arbitration provides a fair, confidential, and prompt way to resolve any differences that may arise between an employee and it. A complete copy of this policy will be provided to all employees with this handbook for their review and signature.

*See* Exhibit 3, at p. 44; Doc. 51-1 at p. 45.

---

[1] Utilimap produced the *Martinez* handbook after a hearing to compel its production on March 27, 2015. *See* Doc. 40, Utilimap's Notice to Court. It is filed under seal as Doc. 51-1.

2

### 3. Utilimap's Arbitration Agreement Is Illusory.

Given these provisions, Judge Lake ruled Utilimap's agreement was illusory and therefore unenforceable under *Carey,* 669 F.3d at 209. *See* Exhibit 1, at p. 7, l. 19 – p. 8, l. 3. But Utilimap baldly asserts, without citing any authority, that the "Texas Court's ruling would certainly be wrong in Illinois. Illinois courts have, and should, reject the argument that the ability to modify an employee handbook somehow invalidates an arbitration agreement that expressly requires mutual agreement to modify or rescind." *See* Doc. 52, at p. 5. Judge Lake specifically rejected this argument because he found the arbitration agreement to be part of a handbook that "is subject to change **at any time** at the **sole discretion of Defendant's president**[.]" Exhibit 1, at p. 7, l. 19 – p. 8, l. 3 (emphasis added).

Judge Lake's finding distinguishes Utilimap's employment handbook and arbitration agreement from those in *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866 (Tex. App. 2006) and *Curry v. MidAmerica Care Found.*, No. TH 02-0053-C T/H, 2002 WL 1821808 (S.D. Ind. June 4, 2002). In those cases, the arbitration agreements were upheld because they were found to be separate from the handbooks. See *Curry,* 2002 WL 1821808 at *4; *D.R. Horton, Inc.,* 207 S.W.3d at 865 (arbitration agreement contained in separate "Employee Acknowledgement Form").

*Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002) is more readily distinguishable. In *Tinder*, the employer instituted an arbitration policy separately from the handbook through a "payroll stuffer" that contained a brochure that unequivocally explained that both employees and the company were bound by arbitration and that neither side could back out if they remained employed after an effective date that was approximately 3 months later. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 731-32 (7th Cir. 2002). The arbitration agreement in *Tinder* survived because it "limits [the employer's] ability to make retroactive modifications to the arbitration provision." *See Carey*, 669 F.3d at 206. Utilimap's arbitration agreement is exactly the opposite. Plaintiffs could have instituted arbitration and Utilimap could have then unilaterally eliminated arbitra-

tion at its sole discretion. *See* Exhibit 1 at p. 7, l. 24 – p. 8, l. 3. This is why Utilimap's arbitration agreement is illusory. *Carey*, 669 F.3d at 206.

**4.      Utilimap Waived Arbitration.**

Although federal policy favors the enforcement of private arbitration agreements, it is not absolute. See *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Midwest Window Systems, Inc. v. Amcor Industries, Inc.,* 630 F.2d 535, 536 (7th Cir.1980). The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2; *see McMahon,* 482 U.S. at 226, 107 S.Ct. at 2337. As can be seen from § 2's language, federal policy favoring arbitration is not an absolute preference for arbitration over litigation anytime an arbitration agreement exists. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 587 (7th Cir. 1992). Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is waiver of the right to arbitrate. *See, e.g.*, *Morrie & Shirley Mages Foundation v. Thrifty Corp.,* 916 F.2d 402, 405 (7th Cir.1990); *Midwest Window,* 630 F.2d at 536; *National Foundation for Cancer Research v. A.G. Edwards & Sons,* 821 F.2d 772, 774 (D.C.Cir.1987) ("*NFCR* ").

A contractual right to arbitrate may be waived expressly or implicitly, and a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate. *See Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir.1995). Courts must examine the totality of the circumstances and "determine whether based on all the circumstances, the [party against whom the waiver is to be enforced] has acted inconsistently with the right to arbitrate." *Grumhaus v. Comerica Securities, Inc.,* 223 F.3d 648, 650-51 (7th Cir.2000) (quotation omitted); *see also Iowa Grain Co.,* 171 F.3d at 510. Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision-"*did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?*" *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304

F.3d 753, 756-57 (7th Cir. 2002) (alteration in original) (citations omitted). Other factors that include whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). This policy prevents parties from waiting to see how they fare in a judicial forum before choosing arbitration, prevents the duplicative adjudication of disputes, and prevents the undue prejudice that results from a party spending time and money on litigation that will not ultimately resolve a case. *Id.*

### A. Utilimap's "Wait and See" Approach Constitutes Waiver.

Utilimap makes much of the fact that it requested on the eve of Plaintiff Dones' noticed deposition, that he postpone. But Utilimap does not mention it originally insisted on Dones' deposition in St. Louis after learning it was impossible for Dones to travel to the U.S. for legal and financial reasons. *See* Doc. 33 (Order for videoconference deposition). Instead, over Utilimap's objection, Dones secured a ruling from Judge Wilkerson to have his deposition taken in Monterrey, Mexico by videoconference. *Id.* If Utilimap had succeeded in requiring Dones' physical presence in the U.S., it would have had grounds to seek a dismissal "on the merits" under Rule 41(b). *See* Fed. R. Civ. P. 41(b); *Mitchell v. Davis*, No. 13-CV-0627-MJR-SCW, 2014 WL 2976339, at *1 (S.D. Ill. July 2, 2014).

Only after losing this opportunity for dismissal did Utilimap's lawyer finally request his client dig up the arbitration agreements. *See* Doc. 36-1 (Anderson Declaration) at ¶ 4 ("On or about March 17, 2015, counsel requested that we confirm documents had been provided to [Plaintiffs] and we investigated, including physical files in storage, and discovered the arbitration agreements."). Utilimap's "wait and see" approach demonstrates the lack of diligence that "weighs heavily" against preserving arbitration. *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). Although Utilimap's first attempt to dispose of the case through a motion to dismiss, does not *per se* constitute a waiver, Utilimap should not be allowed to repeatedly use this Court to pick off Plaintiffs' case over the course of more than a year and then try to compel arbitration agreement when those attempts fail. *Id.* at 994-95.

### B. Utilimap Agreed To This Forum.

"Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). This policy is reflected not only in the thirty-day deadline for removing a suit from state to federal court but also in the provision waiving objections to venue if not raised at the earliest opportunity. *Id*; Fed.R.Civ.P. 12(h)(1). Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election—against arbitration. Except in extraordinary circumstances not here presented, they should be bound by their election. *Id*.

Utilimap agreed to this forum when it agreed to a discovery plan and scheduling order. *See* Doc. 27 at p. 3 (Joint Report of the Parties and Proposed Scheduling and Discovery Order). Utilimap "discussed and agreed to" all matters concerning this litigation, including: to conduct and be subject to discovery; waive default limits on depositions and interrogatories; and deadlines about discovery, motion filings, and trial dates. Doc. 27 at p. 3. This post-arbitration agreement to proceed before this Court should be enforced.

### C. Now That Utilimap Has Its Discovery, It Moves to Compel Arbitration.

Courts find waiver of arbitration when the party seeking arbitration has conducted discovery. *Kawasaki Heavy Indus., Ltd..*, 660 F.3d at 994 (7th Cir. 2011) (citing *St. Mary's Med. Ctr. of Evansville, Inc.* 969 F.2d at 591). The extent of Utilimap's discovery has already been briefed in Plaintiffs' Response to Utilimap's Motion to Stay and is incorporated herein by reference. *See* Doc. 50 at p. 4. And there is no dispute that Utilimap deposed Martinez at its own insistence before moving to compel arbitration.

Plaintiffs collectively responded to Utilimap's 150 requests for production and 36 interrogatories (not including numerous subparts). *See* Doc. 50 at p. 4. The case is over a year old and hundreds of pages of payroll spreadsheets and other employment documents have now been produced. Utilimap's suggestion that discovery is in its infancy because it only received 17 documents from Plaintiffs is absurd. That is all Plain-

tiffs had. The relevant documents, like payroll and other employment documents are almost exclusively in Utilimap's possession.

Utilimap also claims discovery is just beginning because Plaintiffs have not deposed Utilimap. But these depositions have not occurred because Plaintiffs had not received relevant payroll and employment documents from Utilimap – documents that Utilimap resisted producing until after two conferences with Judge Wilkerson that resulted in setting a date for Plaintiff to move to compel. *See* Doc. 41. The motion became unnecessary only after Utilimap finally agreed to cooperate. *See* Doc. 44. Utilimap's efforts to avoid and delay discovery until ordered by this Court should not be the basis to find that discovery is in its beginning stages. Furthermore Utilimap cannot claim on one hand that "responsibility for the conduct of discovery lies with the arbitrators," (*See* Doc. 52 at p. 8), but on the other, agree to discovery in the proposed scheduling order (Doc. 27) and actually conduct that discovery before the Court. With Plaintiffs' responses to almost 200 written discovery requests and the depositions of the Plaintiffs in the bag, it begs the question, what more discovery does Utilimap need? Utilimap's discovery conduct manifests a clear preference to proceed before this Court instead of before an arbitrator.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/s/ David I. Moulton**
_____
David I. Moulton
Texas Bar No. 24051093
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
dmoulton@brucknerburch.com

## CERTIFICATE OF SERVICE

A copy of this document was served on all parties via the Court's ECF system.

**/s/ David I. Moulton**
David I. Moulton