THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CIPRIANO MARTINEZ and PATRICIO DONES, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>UTILIMAP CORP.,<br><br>        Defendant. | Case No. 3:14-cv-310-JPG-DGW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Utilimap Corporation's motion to compel plaintiffs Cipriano Martinez and Patricio Dones to arbitrate this dispute and to stay this litigation pending completion of arbitration (Doc. 35). The plaintiffs have responded to the motion (Doc. 53), and Utilimap has replied to that response (Doc. 55). The Court also considers the plaintiffs' motion for class certification (Doc. 3).

**I.      Background**

Each plaintiff[1] worked as an at-will employee for Utilimap, a full-service utility inspection company, as an hourly laborer in the Ground Line Treatment Division for about two years. In their work for Utilimap, the plaintiffs dug around utility poles, inspected them and treated them with wood preservatives. They allege that they routinely worked more than forty hours a week, but that Utilimap did not pay them one and one-half times their regular pay rate for those excess hours. This practice is referred to as "straight time for overtime." Additionally, they allege that

---

[1] Although the plaintiffs have pled this as a class action, prior to certification, it remains the case of the named plaintiffs only. "[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiffs." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002). Thus, the Court only considers at this time whether Utilimap's dispute with the named plaintiffs is subject to arbitration.

Utilimap did not pay them for all the hours they worked even at their regular "straight time" pay rates. They claim this occurred because the plaintiffs' foremen, who recorded the hours plaintiffs worked, systematically failed to record hours the plaintiffs spent travelling between job sites and performing necessary preparatory activities.

The plaintiffs filed this lawsuit in March 2014. They allege five causes of action: a claim for failure to pay for all hours worked at the agreed hourly pay rate in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* (Count I); a claim for failure to pay overtime wages in violation of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* (Count II); a claim for failure to pay Dones the straight and overtime wages he is due in violation of the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employment § 3-501 *et seq.* (Count III); a claim for failure to pay Dones overtime wages in violation of the Maryland Wage and Hour Law , Md. Code Ann., Labor & Employment § 3-401 *et seq.* (Count IV); and a claim for failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (Count V). They also assert they should be allowed to file a collective action in Count V under 29 U.S.C. § 216(b) and a class action in Counts I through IV under Federal Rule of Civil Procedure 23 on behalf of those similarly situated to them.

Utilimap believes this dispute is subject to mandatory arbitration based on an arbitration agreement the plaintiffs signed when they first started working for Utilimap. Utilimap's employee handbook describes its arbitration policy generally:

> **Arbitration Policy**
> The Company has adopted an arbitration policy to resolve all employment disputes between employees and the Company. The Company believes that arbitration provides a fair, confidential and prompt way to resolve any differences that may arise between an employee and it. A complete copy of this policy will be provided to all employees with this handbook for their review and signature.

2010 Employee Handbook 43. Attached to the employee handbook as Exhibit B2[2] is a more detailed description of the policy that includes the following relevant terms:

### UTILIMAP CORPORATIONS ARBITRATION POLICY

In consideration of your continued and/or initial employment with Utilimap Corporation, if an employment dispute arises related to your employment with Utilimap Corporation, the Company requests that you agree to submit any such dispute arising out of your employment . . . (including, but not limited to . . . any claims, demands or actions based upon any claim for wages, salary or commissions claimed to be due. . . ) exclusively to binding arbitration under the Federal Arbitration Act, 9 U.S.C., Section 1. . . . Arbitration shall be the exclusive means of resolving any dispute arising out of your employment or termination from employment by Utilimap Corporation, and no other action can be brought by you in any court or any other forum.

By simply accepting or continuing employment with Utilimap Corporation and your signature hereafter, you automatically agree that arbitration is the exclusive remedy for all disputes arising out of or related to your employment with Utilimap Corporation and you agree to waive all rights to a civil court action regarding your employment and the termination of your employment with Utilimap Corporation. There under, only an arbitrator, and not a judge nor a jury, will decide your dispute. The arbitrator also will decide all disputes related to this arbitration agreement.

* * *

### EMPLOYEE ACKNOWLEDGMENT

I acknowledge that I have read and understand the above arbitration policy and that I voluntarily agree to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment . . . with Utilimap Corporation including but not limited to those set out above. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim against Utilimap Corporation, and each of its employees, officers, directors or agents, parents, subsidiaries, affiliates and successor companies and that by agreeing to use arbitration both I and Utilimap Corporation agree to forego any right we each may have had to a jury trial on issues covered by the arbitration policy. Any judicial review of the arbitrator's decision will be only to the extent allowed by the Federal Arbitration Act and/or related to the enforcement of the arbitrator's award. I further acknowledge that this arbitration agreement constitutes the entire agreement between me and Utilimap Corporation and may not be modified or rescinded except in writing signed by both me and Utilimap Corporation.

---

[2] There are two Exhibit Bs attached to the employee handbook. The arbitration policy is the second of the two, so for simplicity's sake the Court will refer to it as Exhibit B2.

2010 Employee Handbook, Ex. B2, 50-51.  Below this is a space for an employee to sign.  Martinez signed a copy of Exhibit B2 on August 20, 2010, and Dones signed on February 15, 2011, presumably around the respective times they each began working for Utilimap.

The plaintiffs argue the arbitration agreement is unenforceable because it is illusory in that Utilimap can unilaterally modify its employee handbook to escape its obligation to arbitrate.  It further argues that Utilimap has waived any right it may have to demand arbitration by waiting until a year after this action was filed, and participating in this litigation until then, to invoke the arbitration clause.

**II.    Analysis**

All parties agree that the arbitration agreement in this case is covered by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  The FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.  The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *accord Perry v. Thomas*, 482 U.S. 483, 488 (1987).  The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443-44 (2006); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

*Moses H. Cone*, 460 U.S. at 24-25; *accord County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 823 (7th Cir. 2006). Nevertheless, the Court must remember that the intentions of the parties in entering an arbitration agreement trump the FAA's pro-arbitration policy, and a party cannot be compelled to arbitrate a dispute it did not agree to submit to arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995); *see Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 782 (7th Cir. 2014); *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005).

The FAA commands a federal court, on the request of one of the parties, to stay proceedings where (1) the issue is "referable to arbitration under an agreement in writing for such arbitration," and (2) "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3; *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The stay shall last "until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3; *accord Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (quoting *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 732 n. 7 (7th Cir. 2005) ("the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright")). The FAA also commands a federal court to affirmatively compel arbitration where there is a written agreement to arbitrate, the dispute falls within the scope of the agreement, and the opposing party refuses to arbitrate. *See* 9 U.S.C. § 4; *Zurich Am. Ins. Co.*, 417 F.3d at 690.

The parties agree that this dispute is within the scope of the arbitration agreement as written, but they disagree about whether the agreement is enforceable. The plaintiffs believe it is unenforceable for two reasons: it is invalid and Utilimap has waived it. The Court will address

each argument in turn.

    A.    <u>Validity of Arbitration Agreement</u>

Whether a dispute is subject to arbitration pursuant to valid arbitration agreement is a gateway issue that should be decided by the Court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Questions of arbitrability generally include whether a specific party is bound by an arbitration clause, whether the clause applied to a certain kind of dispute, *id.* at 84, and whether a contract was actually formed and is enforceable, *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010). Courts apply state contract law when determining whether there is a valid agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997).

The plaintiffs argue the arbitration agreement is invalid and unenforceable because it is illusory. They point to provisions in Utilimap's employee handbook allowing Utilimap to unilaterally change the handbook:

> This employee handbook is a living document. As the Company grows, the handbook will be reviewed periodically and adapted to the changing needs of the Company and its employees. All changes must be authorized and approved by the Company President. You will be notified of any change in the policies or programs described in this handbook.

2010 Employee Handbook 1, and

> I have received and read a copy of the Utilimap Corporation's Employee Handbook. . . . I agree to abide by all of Utilimap Corporation policies. . . . I understand that the policies and benefits described in it are subject to change at the sole discretion of Utilimap Corporation's President at any time.

2010 Employee Handbook, Ex. A, 48.

In support of its position that their agreements to arbitrate are illusory and therefore

unenforceable, the plaintiffs cite *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012). In that case, applying Texas law, the Court of Appeals for the Fifth Circuit considered an arbitration provision contained within an employee handbook. *Id.* at 204. An employee had signed an acknowledgement that he had received the handbook and agreed to the arbitration provision, which the employer believed obligated the employee to arbitrate the dispute at hand. *Id.* The Court of Appeals found the agreement to arbitrate was illusory because the acknowledgement also allowed the employer to unilaterally and retroactively revise the handbook to avoid its obligation to arbitrate. *Id.* at 209. The deciding factor for the court was the lack of a provision that prevented changes in the arbitration policy from applying to existing disputes, which would result in "the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it." *Id.* The decision in *Carey* led the District Court for the Southern District of Texas to hold Utilimap's standard arbitration agreement unenforceable under Texas law in *Herrera v. Utilimap Corp., L.P.*, No. 4:11-cv-3851 (S.D. Tex. Feb. 3, 2012).

In response, Utilimap argues that the arbitration agreement is not illusory because, despite language in the employee handbook, the arbitration agreement, by its express terms, cannot be modified or rescinded except in writing by the employee and Utilimap. It argues that the arbitration agreement is separate and distinct from the employee handbook and that the provisions for unilateral modification of the handbook do not apply to the arbitration agreement. Utilimap further argues that the agreement is not illusory because it is mutually binding on the parties.

Analysis of this issue is complicated by the fact that no party addresses which state's law should be applied to determine whether there is a valid agreement to arbitrate. Utilimap implies it

believes Illinois law applies, and the plaintiffs do not dispute that implication. The application of Illinois law does not appear unreasonable in light of the fact that the plaintiffs allege substantial periods of their employment occurred in Illinois. Therefore, the Court assumes without deciding that Illinois law governs whether there is a valid arbitration agreement in this case.

Under Illinois law, "an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) (citing *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)). "[C]onsideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance." *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997) (citing Restatement (Second) of Contracts § 71 (1981)). "Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract." *Steinberg*, 371 N.E.2d at 639.

The parties' discussion of this case in terms of whether Utilimap's arbitration agreement is "illusory" is essentially, to use these more traditional contract terms, a dispute over whether there was sufficient consideration for a contract to arbitrate to have been formed. *See W.E. Erickson Constr., Inc. v. Chicago Title Ins. Co.*, 641 N.E.2d 861, 864 (Ill. App. Ct. 1994) ("An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything."). If Utilimap, like the employer in *Carey*, promised to arbitrate any employment-related disputes with the plaintiffs as consideration for the plaintiffs' agreement to do likewise but then left the door open to renege on that obligation if the plaintiffs actually tried to pursue arbitration, Utilimap would essentially be offering no consideration for the plaintiffs' agreement to arbitrate. The agreement would then be invalid and unenforceable for lack of consideration. So the question boils down to whether Utilimap provided consideration for the

plaintiffs' agreement to arbitrate their employment disputes.

Utilimap first argues that it provided consideration because it is bound by the arbitration agreement and cannot unilaterally modify the arbitration agreement, which is freestanding from the employee handbook and requires the written agreement of both parties before it can be modified. In other words, Utilimap believes it has made a binding promise in the arbitration agreement that it cannot unilaterally and retroactively change. With all due respect to the *Herrerra* court, the Court disagrees with its conclusion that the arbitration agreement is not a separate agreement from the handbook. Although there are certain indications the documents should be considered together – the arbitration agreement is an exhibit to the employee handbook and its pages continue with the pagination established in the handbook – compelling evidence indicates they are separate documents. The employee handbook states that a complete copy of the arbitration policy will be provided *with* the handbook, which implies it is not part of the handbook itself. Indeed, the arbitration agreement is an exhibit to, not a section of, the employee handbook and requires a signature separate from the employee's acknowledgement he has received the handbook. The arbitration agreement further states that it "constitutes the entire agreement" between the employee and Utilimap, suggesting the employee handbook is not part of that agreement. Finally, consistent with this conclusion, the arbitration agreement expressly states that it cannot be modified or rescinded except by written agreement by both parties, which clearly differs from the employee handbook's provisions allowing unilateral modification by Utilimap. Thus, the Court finds the arbitration agreement is not "illusory" on the grounds that Utilimap may unilaterally and retroactively change it pursuant to the terms of the employee handbook. On the contrary, it is support by any binding promises it makes in the arbitration agreement itself.

The Court now turns to what Utilimap has promised in the arbitration agreement and whether those promises provide adequate consideration for the agreement. The arbitration agreement is decidedly one-sided as to the obligation to arbitrate. A careful reading reveals that the agreement only binds the plaintiffs to arbitrate employment disputes they have with Utilimap, but it does not bind Utilimap to arbitrate employment disputes it has with the plaintiffs:

> [T]he Company *requests that you* agree to submit any such dispute arising out of your employment . . . exclusively to binding arbitration. . . .
>
> Arbitration shall be the exclusive means of resolving any dispute . . . and no other action can be *brought by you* in an court or any other forum.
>
> *[Y]ou automatically agree* that arbitration is the exclusive remedy for all disputes . . . and *you agree* to waive all rights to a civil court action. . . . [O]nly an arbitrator . . . will decide *your dispute*.
>
> *I voluntarily agree* to submit to final and binding arbitration any and all disputes. . . . I understand that final and binding arbitration will be the sole and exclusive remedy for any such *claim against Utilimap Corporation*. . . .

2010 Employee Handbook, Ex. B2, 50-51 (emphasis added). The only language arguably binding Utilimap to arbitrate is the promise "to forego any right . . . to a jury trial on issues covered by the arbitration policy," that is, disputes the plaintiffs have against Utilimap. So, for example, if the plaintiff commences an arbitration over a wage and hour dispute, Utilimap agrees not to file a lawsuit about it, an absurd idea to begin with since the claim is the plaintiffs'. Utilimap does not, however, agree not to file suit against the plaintiffs, say, if they fail to return Utilimap's tools or vehicles after their employment ends or if they fail to keep Utilimap's confidential information secret. Utilimap's promise is essentially pointless because it only promises not to file suits it would not file anyway and does not agree to refrain from the suits it would actually file. Such a promise cannot serve as consideration for another party's agreement to arbitrate. *See, e.g.,*

*Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624-27 (Ill. App. Ct. 2005) (finding arbitration agreement relating to automobile sales transaction unsupported by consideration where one party carved out exceptions in agreement for all conceivable suits it would file).

A mutual promise to arbitrate, however, is not required for an enforceable arbitration agreement if the agreement is supported by other consideration, *id.* at 625, and under Illinois law, this other consideration can be continued at-will employment, *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) ("[U]nder Illinois law, continued employment is sufficient consideration for the enforcement of employment agreements.") (citing *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987)). Here, Utilimap made the plaintiffs' employment contingent on acceptance of the arbitration agreement; the first sentence of the arbitration agreement states that Utilimap is offering initial or continued employment in consideration for the employee's agreement to abide by the arbitration agreement. This is not an empty or illusory promise but an offer of continued employment, a benefit to the plaintiffs, conditioned on a promise that the plaintiffs would agree to the arbitration agreement. The plaintiffs accepted that offer by signing the arbitration agreement and by working thereafter for Utilimap. Thus, Utilimap's agreement to employ the plaintiff provides sufficient consideration for the plaintiffs' agreement to arbitrate their disputes with Utilimap.

For the foregoing reasons, the Court finds the arbitration agreement was supported by sufficient consideration and is therefore enforceable.

B.  <u>Waiver</u>

The plaintiffs further argue that, even if the arbitration agreement is supported by adequate consideration, the Court should find Utilimap has waived its right to enforce the agreement. They

note that they filed this lawsuit in March 2014 and that Utilimap waited more than a year to invoke the arbitration clause. In the meantime, Utilimap asked the Court to dismiss this case for failure to state a claim, participated in setting a litigation schedule, propounded written discovery requests, responded to the plaintiffs' discovery requests, and deposed both plaintiffs. Although not mentioned by the plaintiffs, the Court further notes that Utilimap was involved in litigation over its handbook and the attached arbitration agreement in *Herrerra* from December 2011, when Utilimap filed its motion to compel arbitration in that case, to February 2012, when the Texas court denied that motion. This was slightly more than two years before this litigation began.

Utilimap argues that it first learned of the existence of the arbitration agreement when it reviewed the plaintiffs' physical employment files in storage in March 2015. Those files had been converted to electronic files after Utilimap's ownership changed in October 2011, but the arbitration agreements signed by the plaintiffs did not make it into the electronic files. Virtually all of Utilimap's voluntary participation in this litigation was before the discovery of the signed arbitration agreements in March 2015. Within a matter of days of discovering those documents, Utilimap demanded the plaintiffs stay discovery and arbitrate this dispute. When they refused, Utilimap moved to compel arbitration and stay this proceeding.

As a preliminary matter, the Court questions whether Utilimap's potential waiver of its right to force arbitration is a question for the Court or the arbitrator to decide. Neither party has addressed the question, but *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), appears to be relevant, if not controlling. *Howsam* involved an arbitration agreement between an investor and an investment advisor that was governed by a rule imposing a limitations period for arbitrating disputes. *Id.* at 81. The investor initiated arbitration beyond the limitations period, so the

investment advisor filed a suit seeking to enjoin the arbitration. *Id.* The Supreme Court reiterated the longstanding rule that the "question of arbitrability" of a dispute is for a court to decide as a gateway matter. *Id.* at 83-84. However, it noted that gateway matters for a court to decide generally include whether a specific party is bound by an arbitration clause, whether the clause applied to a certain kind of dispute, *id.* at 84, and whether a contract was actually formed and is enforceable, *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010). On the other hand, procedural questions like waiver, delay, time limits, notice, laches, estoppel and satisfaction of conditions precedent to arbitration are presumptively for the arbitrator to decide, even though they can effectively close the gate to arbitration. *Howsam*, 537 U.S.. at 84-85. The latter issues, the Court noted, are not really "questions of arbitrability" as federal jurisprudence recognizes such questions. *Id.* at 85. Thus, in the absence of any language to the contrary, the time limitation defense was for the arbitrator to decide. *Id.*

In *BG Group, PLC v. Republic of Arg.*, 134 S. Ct. 1198 (2014), the Supreme Court reiterated the line between what issues are presumptively for courts and arbitrators to decide:

> On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about "arbitrability." These include questions such as "whether the parties are bound by a given arbitration clause," or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."
>
> On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of "waiver, delay, or a like defense to arbitrability." And they include the satisfaction of "'prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate.'"

*Id.* at 1206-07 (internal citations omitted); *see also Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 481 (7th Cir. 2010) (holding that whether disagreement notices,

13

a precondition to arbitration, were detailed enough was a question for the arbitrator).  *Compare R.J. Corman Derailment Servs., LLC v. International Union of Operating Eng'rs, Local Union 150*, 422 F.3d 522, 527 (7th Cir. 2005) (distinguishing *Howsam* and deciding as court's question of arbitrability whether arbitration agreement was still in force after expiration of collective bargaining agreement).

The Court is tempted to say, based on *Howsam*'s express recognition of waiver as an issue presumptively for the arbitrator to decide, that the parties must seek an answer from the arbitrator.  The parties agreed to a broad arbitration agreement, requiring the plaintiffs to litigate "any and all claims and disputes that are related in any way to my employment . . . with Utilimap."  2010 Employee Handbook, Ex. B2, 51.  It is clear, and aside from the consideration issue, all parties agree that the broad arbitration agreement covers the dispute at issue in this case and binds all parties to this case.  Under *Howsam*, there is a presumption that that is all the Court decides, and that other matters such as whether Utilimap has waived its right to demand compliance with the arbitration clause are left to be decided by an arbitrator.  Since there is no clear and unmistakable indication otherwise in the relevant documents, the *Howsam* presumption holds.

The proper course of action, however, is not so clear when the issue is waiver by participation in litigation activity.  As the District Court for the Northern District of Illinois has noted, the Courts of Appeals are split on the question.  *Dental USA, Inc. v. Beak & Bumper, LLC*, No. 13 C 02149, 2014 WL 683709, at *4 (N.D. Ill. Feb. 21, 2014) (citing *Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 11-14 (1st Cir. 2005) (courts decide waiver question); *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.,* 97 Fed. App'x 462, 464 (5th Cir. 2004) (same); *National Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.,* 328 F.3d 462, 466 (8th Cir. 2003)

(arbitrator decides waiver question)). The Seventh Circuit Court of Appeals has cited *Howsam*'s statement that waiver is a question for the arbitrator, *see Lumbermens Mut. Cas. Co.*, 623 F.3d at 480, but it has also performed the waiver analysis post-*Howsam* without mentioning the case, *see, e.g., Kawasaki Heavy Indus. Ltd. v. Bombardier Rec. Prods., Inc.,* 660 F.3d 988, 993-98 (performing a waiver analysis and holding that a party did not waive its right to arbitrate by its litigation conduct). However, since Utilimap has not argued that the issue must be decided by an arbitrator, it was waived the argument. *United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999) (courts are not "in the business of formulating arguments for the parties."). The Court will proceed to decide whether Utilimap waived its right to enforce the arbitration clause by participating in litigation activities.

It is beyond question that a party entitled by contract to arbitration may waive that entitlement either explicitly or by inference from the party's conduct. *Kawasaki*, 660 F.3d at 994 (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 587 (7th Cir. 1992)). The Court considers the totality of the circumstances when deciding whether to infer waiver because a party acted inconsistently with the right to arbitrate. *Kawasaki*, 660 F.3d at 994. The party asserting a waiver has occurred bears the burden of proving it. *St Mary's Med. Ctr.*, 969 F.2d at 590. The Court should consider factors such as the party's diligence, its participation in discovery and litigation, any substantial delay in a request for arbitration, and prejudice to the opposing party caused by reliance on the litigation behavior. *Kawasaki*, 660 F.3d at 994. A party's choice to proceed in a judicial forum creates a rebuttable presumption that the party has waived its right to demand arbitration. *Id.* at 995. However, simply responding to litigation actions by the other party or filing a motion to dismiss that does not seek a resolution of

the dispute does not necessarily amount to a choice to litigate. *Id.* at 995-96 (motion to dismiss based on jurisdiction was not waiver); *compare Faulkenberg v. CB Tax Franchise Sys., L.P.*, 637 F.3d 801, 807 (7th Cir. 2011) (motion to dismiss based on venue was not waiver); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 727 (7th Cir. 2004) (same), *with St. Mary's Med. Ctr.*, 969 F.2d at 589 (motion to dismiss and for summary judgment dispute on the merits was waiver); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) (removal to federal court, participation in discovery and delay was waiver).

Several factors weigh in favor of waiver. Most serious is the fact that Utilimap waited until a year after this case was filed to assert its right to compel arbitration. This delay appears unreasonable in light of the fact that Utilimap should have been aware of the arbitration agreement long before then. It appears that its general policy, as reflected in its Employee Handbook, was to require *all* its employees to enter into arbitration agreements, and Utilimap had been in litigation in *Herrerra* over that very agreement only two years before this case was filed. Utilimap explains its failure to raise the arbitration issue earlier in this case because of a change in ownership, but that ownership transfer occurred in 2011, so it is unlikely the new owners were unaware of the *Herrerra* litigation. Additionally, in June 2014, Utilimap filed a motion to dismiss for failure to state a claim in this case. That motion sought a final decision and was not based on venue, lack of jurisdiction or some other basis recognized not to waive the right to compel arbitration.

Other factors weigh in favor of finding no waiver. It appears Utilimap's failure to locate the arbitration agreements signed by the plaintiffs was due to a clerical error unrelated to this litigation, not a "choice" to withhold the agreement until it saw how the litigation fared following the motion to dismiss, and that Utilimap was not delinquent in initially searching the plaintiffs'

16

electronic files for them. Even if Utilimap knew based on *Herrerra* (where it was represented by different counsel) and its Employee Handbook written arbitration agreements *should* have existed, it was reasonable to wait until they were actually located to try to enforce them. Once the signed agreements were located, Utilimap promptly sought to compel arbitration.

    Furthermore, Utilimap's participation in scheduling in December 2014 was prior to its locating the signed arbitration agreements and could not be construed as a choice to forego arbitration. As for discovery, it appears Utilimap only deposed one plaintiff and received one set of produced documents prior to its locating the arbitration agreements. Later, it sought to stay its responses to the plaintiffs' discovery in light of those agreements, and only answered those requests when required by federal rules or court orders. This conduct can hardly be characterized as a choice to proceed in litigation rather than arbitration. As for Utilimap's motion to dismiss, although it technically sought a final resolution of the case, it was actually directed toward the sufficiency of the pleading in light of Federal Rule of Civil Procedure 8(a)(2) and was more likely to result in leave to file an amended complaint than in a final resolution of the case.

    Finally, it does not appear any party will suffer undue prejudice from being forced to resolve this case in arbitration. It should not have been a surprise to the plaintiffs' attorneys that the arbitration agreements existed; they were the same attorneys who represented the plaintiff in *Herrerra*. Additionally, any work the parties have done on this case in this forum would also have needed to be done in an arbitration form and will still be useful there.

    Weighing all factors discussed above, the Court finds the plaintiffs have not carried their burden of proving Utilimap has acted inconsistently with the right to arbitrate and has made a choice to resolve this dispute in a judicial forum. Accordingly, the Court concludes Utilimap has

17

not waived its right to demand arbitration of the plaintiffs' disputes.

In light of this ruling, the Court finds Martinez and Dones would not fairly and adequately protect the interests of a class of plaintiffs in class action litigation as required by Federal Rule of Civil Procedure 23(a)(4). Accordingly, the Court will deny their motion for class certification (Doc. 3).

### III. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Utilimap's motion to compel arbitration and to stay this litigation pending completion of arbitration (Doc. 35);

- **STAYS** this case until arbitration has been had in accordance with the terms of the arbitration agreement attached to the Employee Handbook;

- **COMPELS** Martinez and Dones to resort to arbitration;

- **DENIES without prejudice** Martinez and Dones' motion for class certification (Doc. 3); and

- **ORDERS** Martinez and Dones to file a status report in September 2015, and every March and September thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**IT IS SO ORDERED.**
**Date: June 25, 2015**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**