THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CIPRIANO MARTINEZ and PATRICIO DONES, on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>UTILIMAP CORP.,<br><br>　　　　　　Defendant. | Case No. 3:14-cv-310-JPG-DGW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiffs Cipriano Martinez and Patricio Dones to confirm the arbitration clause construction award (Doc. 69). Arbitrator Jeffrey L. Taren issued the award on June 10, 2016, in AAA No. 01-15-0004-6935 (Doc. 69-1). Defendant Utilimap Corporation has responded to the motion (Doc. 71), and the plaintiffs have replied to Utilimap's response (Doc. 72).

**I.　　Background**

Each plaintiff worked as an at-will employee for Utilimap, a full-service utility inspection company, as an hourly laborer in the Ground Line Treatment Division for about two years. In their work for Utilimap, the plaintiffs dug around utility poles, inspected them and treated them with wood preservatives. They allege various wage and hour violations of Illinois, Maryland and/or federal law.

The plaintiffs filed this lawsuit in March 2014, and in an order dated June 25, 2015, the Court compelled the parties to arbitrate pursuant to an arbitration agreement each plaintiff signed when he first started working for Utilimap (Doc. 61). That agreement stated, in pertinent part, "Arbitration shall be conducted before an experienced arbitrator chosen by you and Utilimap

Corporation and will be conducted under the procedural rules of the American Arbitration Association ('AAA')." The parties ended up selecting Arbitrator Taren, who rendered a "Partial Final Clause Construction Award" on June 10, 2016. That award construed the arbitration agreement to include "an agreement to submit to binding arbitration, 'any claims, demand or actions based upon any claim for wages', including any class action wage claims and any collective action wage claims." Arb. Award at 24. This was despite the arbitration agreement's failure to expressly provide that class or collective actions brought by the plaintiffs were covered by the agreement.

The plaintiffs ask the Court to confirm this award interpreting the arbitration agreement to cover class and collective disputes (for simplicity's sake, the Court will call these "class" disputes). For its part, Utilimap argues that it never agreed in the arbitration agreement to arbitrate class disputes and that Arbitrator Taren exceeded the scope of the authority given to him in the arbitration agreement by deciding the question, and deciding it wrongly, to boot. It further argues that whether the parties have agreed to class arbitration is a threshold question of arbitrability for a court, not an arbitrator, to decide. It then asks the Court to conduct a *de novo* review of whether it should be forced to arbitrate the plaintiffs' class dispute. The plaintiffs respond that Utilimap agreed to submit the question of class arbitrability to the arbitrator in an early case management conference, by agreeing to the AAA procedures delegating the question of class arbitrability to the arbitrator, and by failing to object to Arbitrator Taren's consideration of the question. It then notes that Arbitrator Taren's decision should be confirmed because it was a legitimate interpretation of the arbitration agreement.

## II.     Analysis

The Court first addresses the threshold issue of who should decide whether the arbitration

agreement covers class disputes, the Court or the arbitrator. If it was for the arbitrator to decide, the Court will then review Arbitrator Taren's construction award to see if it draws its essence from the arbitration agreement. If it was for the Court to decide, the Court will review the question *de novo*.

      A.    <u>Who Decides Whether Class Arbitration is Allowed</u>

Utilimap argues that Arbitrator Taren exceeded the scope of his power by deciding a question not delegated to him in the arbitration agreement – whether the agreement covers class disputes. *See* 9 U.S.C. § 10(a)(4) (authorizing court to vacate arbitration award where arbitrator exceeded his power). It characterizes this as an issue of arbitrability, which is presumptively a gateway issue for the Court to decide. *See Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452 (2003) (plurality opinion). Accordingly, it urges the Court to conduct a *de novo* review of the question.

The plaintiffs argue that, even if the question is one of arbitrarily that is presumptively left for the Court, there is sufficient evidence to overcome that presumption in this case. Specifically, it argues Utilimap agreed in an early arbitration management telephone conference to submit the question of the arbitrability of class disputes to the arbitrator for a decision. They also note that Utilimap agreed in the arbitration agreement to use AAA arbitration rules, which contain a rule in employment cases that requires the arbitrator to determine whether class disputes are subject to arbitration. Finally, they argue that Utilimap waived this objection to the arbitrator's deciding the arbitrability question by not raising it in the arbitration itself.

It is beyond question that parties are only obligated to arbitrate matters they have agreed to arbitrate. *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986); *Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 781 (7th Cir. 2014).

"[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Technologies*, 475 U.S. at 648-49 (citing *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374 (1974)). Consistent with this rule, "a party may not be compelled under the [Federal Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in original).

While parties may agree in principle to arbitrate, it is often not clear what is covered by that agreement, including whether the agreement covers arbitration of class disputes. As the Court has noted earlier in this case, the Supreme Court has long held that questions of arbitrability are presumed to be allocated to a court as a gateway matter. "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies*, 475 U.S. at 649 (citing *United Steelworkers of Am v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, (1960)); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). Those gateway matters generally include whether a specific party is bound by an arbitration clause, whether the clause applied to a certain kind of dispute, *id.* at 84, and whether a contract was actually formed and is enforceable, *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010). On the other hand, procedural questions like waiver, delay, time limits, notice, laches, estoppel and satisfaction of conditions precedent to arbitration are presumptively for the arbitrator to decide, even though they can effectively close the gate to arbitration. *Howsam*, 537 U.S.. at 84-85.

The plaintiffs are correct that neither the Supreme Court nor the Seventh Circuit Court of Appeals has determined conclusively who decides – a court or an arbitrator – whether an arbitration agreement covers class arbitration, that is, whether it is a gateway arbitrability question

for a court or a procedural question for an arbitrator. *See Stolt-Neilsen*, 559 U.S. at 680. Three other Courts of Appeals have held that the class arbitration question is a question of arbitrability presumably for a court to decide, *see Dell Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 875 (4th Cir. 2016), *pet. for cert. filed* No. 16-137 (U.S. July 26, 2016); *Opalinski v. Robert Half Int'l, Inc.*, 761 F.3d 326, 335 (3d Cir. 2014), *cert. denied,* 135 S. Ct. 1530 (2015); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013), as has at least one District Court within the Seventh Circuit, *see Henderson v. United States Patent Comm'n, Ltd.*, No. 15 C 3897, 2016 WL 3027895, at *5 (N.D. Ill. May 27, 2016); *compare Williams-Bell v. Perry Johnson Registars, Inc.*, No. 14 C 1002, 2015 WL 6741819, at *6 (N.D. Ill. Jan. 8, 2015) (agreeing with the majority of District Courts in the Northern District of Illinois that the availability of class arbitration is a procedural question for an arbitrator to decide). This Court need not decide the question, however, because even if the availability of class arbitration is a gateway arbitrability question for a court to decide, the parties in this case have "clearly and unmistakably provide[d] otherwise." *AT&T Technologies*, 475 U.S. at 648.

      They have arguably done so first in the arbitration agreement not by expressly agreeing to allow the arbitrator to decide the question of class arbitrability, but by agreeing that the arbitration "will be conducted under the procedural rules of the American Arbitration Association." Utilimap Corporations Arbitration Policy (Doc. 72-2). The AAA rules that apply to employment disputes like the one in this case are the Employment Arbitration Rules and Mediation Procedures ("AAA Employment Rules"), which contemplate application of, and therefore implicitly include, the Supplementary Rules for Class Arbitrations ("AAA Supplementary Rules") where employment disputes are brought as putative class arbitrations. AAA Employment Rules at 41, https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362&revision=

latestreleased. The AAA Supplementary Rules by their terms apply to:

> any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

AAA Supplementary Rule 1(a) (Doc. 72-4). The AAA Supplementary Rules further provide, "Upon appointment, *the arbitrator shall determine* as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, *whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class*." AAA Supplementary Rule 3, https://www.adr.org/aaa/ShowPDF?url=/cs/groups/commercial/documents/document/dgdf/mda0/~edisp/adrstg_004129.pdf (emphasis added). Utilimap drafted the arbitration agreement incorporating the AAA rules, so it presumably knew the content of the rules it provided would apply and purposefully selected those rules as the governing rules. Because Utilimap agreed to arbitration pursuant to the procedural rules of the AAA, and because the applicable set of AAA rules expressly delegates the class arbitrability question to the arbitrator, Utilimap has agreed to submit the question to the arbitrator.

To the extent there could be any doubt of the fact that Utilimap agreed to let the arbitrator decide the question of class arbitrability by agreeing to use the AAA rules, *see Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761-63 (3d Cir.) ("daisy-chain of cross-references" to AAA rules insufficient to show "clear and unmistakable" intent to submit class arbitrability question to arbitrator rather than court), *cert. denied*, No. 15-1242, 2016 WL 1329220 (U.S. Oct. 3, 2016), that doubt is removed by Utilimap's agreement at the commencement of the arbitration. On March 18, 2016, Arbitrator Taren held an initial case

management telephone conference with counsel for all parties pursuant to the AAA Employment Rules and the AAA Supplementary Rules.[1] Following the conference, he entered a case management order reflecting the discussions at that conference, including the parties' agreement to submit the class arbitrability question to him for decision:

> The parties to the within arbitration are in agreement that, in accordance with Supplement [*sic*] Rule 3, the Arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the arbitration clause contained in the Arbitration Policy signed August 20, 2010 by Claimant Cipriano Martinez III (Exhibit 2) and/or the arbitration clause contained in the Arbitration Policy signed February 15, 2011 by Patricio Dones (but signed as Patricio Moreno) (Exhibit 3), permits the arbitration to proceed on behalf of or against a class.

Initial Case Management Order at 1-2 (Doc. 72-1). This oral agreement by the parties, in and of itself, establishes clearly and unmistakably that Utilimap agreed to submit the arbitrability of class arbitration to Arbitrator Taren for his decision.

Finally, Utilimap's conduct acquiescing to Arbitrator Taren's deciding the class arbitrability question is completely consistent with the agreement stated in the case management order. "If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it." *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union*, 760 F.2d 173, 175 (7th Cir. 1985); *accord William Charles Constr. Co., LLC v. Teamsters Local Union 627*, 827 F.3d 672, 681 (7th Cir. 2016). A party can preserve its objection to submitting an issue to the arbitrator by "carefully and explicitly, in unambiguous language, ma[king] known to the arbitrator and the [opposing party] its clear intention that it [is] maintaining its objections to arbitrability even though it [is] agreeing to proceed with the arbitration hearing." *International Ass'n of Machinists & Aerospace Workers,*

---

[1] Arbitrator Taren referred to the second set of rules as the "Supplemental Rules" rather than the "Supplementary Rules." There are no rules entitled "Supplemental Rules," so it is clear that Arbitrator Taren intended to refer to the "Supplementary Rules."

7

*Lodge No. 1777 v. Fansteel, Inc.*, 900 F.2d 1005, 1009 (7th Cir. 1990); *accord William Charles Constr.*, 827 F.3d at 681.

In no way can Utilimap be said to have carefully and explicitly made known to Arbitrator Taren and the claimants its opposition to Arbitrator Taren's deciding the class arbitrability question. Not once in its arbitration filings did Utilimap object or take exception to Arbitrator Taren's deciding the class arbitrability issue. Instead, it raised only arguments relating to the substantive question of whether class disputes were subject to arbitration under the arbitration agreement. *See* Resp't's Clause Constr. Br. (Doc. 71-3); Resp't's Opp. to Cl'ts' Br. (Doc. 71-4). Utilimap objected for the first time only after Arbitrator Taren issued an award contrary to its interests. By failing to make this objection carefully and explicitly earlier in the arbitration, Utilimap waived any objection it has now to Arbitrator Taren's deciding the class arbitrability issue. Further, this failure to object supports the finding that Utilimap actually agreed to submit the class arbitrability issue to arbitration.

For the foregoing reasons, the Court finds Utilimap agreed clearly and unmistakably to submit the question of class arbitrability to the arbitrator instead of the Court.

B. <u>Review of Arbitrator Taren's Award</u>

Because Arbitrator Taren was authorized by agreement of the parties to render an award construing the arbitration agreement, the Court reviews the award using a deferential standard. The relevant part of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, authorizes the Court to vacate an arbitrator's award "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Utilimap argues that Arbitrator Taren did this by finding that Utilimap had agreed to class arbitration where the arbitration agreement did not mention the

subject, where various provisions of the arbitration agreement – the forum selection clause, the language indicating applicability to a single employee, *etc*. – were inconsistent with proceeding in that manner, and where Arbitrator Taren imposed his own view of appropriate policy.

"A party seeking relief under [Section 10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter,* 133 S. Ct. 2064, 2068 (2013). A court may vacate an arbitration award only if the arbitrator's decision does not draw its essence from the agreement between the parties. *See id.* The Court will uphold an award as long as "an arbitrator is even *arguably* construing or applying the contract and acting within the scope of his authority." *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001) (emphasis added; internal quotations omitted); *accord Local 15, IBEW v. Exelon Corp.,* 495 F.3d 779, 782-83 (7th Cir. 2007). The Court should not overturn an arbitrator's award simply because he "committed serious error, or the decision is incorrect or even whacky." *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013) (internal quotations omitted). "Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards." *Id.* at 1026 (internal quotations omitted). As with labor arbitration awards, the only time the Court should disrupt an award in a commercial arbitration is if the arbitrator "effectively dispenses his own brand of industrial justice because there is no possible interpretive route to the award." *Id.* (internal quotations omitted). To allow the Court plenary review of the merits of an arbitration award "would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final," *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960), and would deprive the parties to an agreement of what they bargained for in an arbitration clause – the arbitrator's decision.

To determine whether Arbitrator Taren issued an award that fails to draw its essence from

the parties' agreement, it is helpful to review the content of the award. Arbitrator Taren first acknowledged the authority to decide the class arbitrability question conferred on him by AAA Supplementary Rule 3, part of the AAA rules to which the parties agreed in the arbitration agreement. Arb. Award at 3. He then acknowledged that arbitration of class disputes is a matter of consent, he set forth the language of the arbitration agreement, and he announced that his job was to determine the parties' intent from the text of that agreement. *Id.* at 3-5. He summarized the parties' positions on the issue, *id.* at 5-8, and determined that, in the absence of any choice of law clause in the arbitration agreement, he would look to Illinois law as well as applicable federal common law principles to interpret the arbitration agreement, *id.* at 8-10.

Arbitrator Taren then found that, in the absence of an express statement as to the parties' intent regarding class arbitration, it was necessary to look at the arbitration agreement as a whole to determine whether the parties (1) intended to submit to class arbitration, (2) intended to exclude class claims from arbitration or (3) reached no agreement on the issue. *Id.* at 10. He acknowledged that if option (3) were the case, *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010), would require the conclusion that the arbitration agreement did not cover class arbitration. Arb. Award at 10-11. He allowed, however, that if the arbitration agreement demonstrated the parties' intent to submit to class arbitration in ways other than an express provision, that would provide a contractual basis for ordering class arbitration. *Id.* at 11. Arbitrator Taren then concluded that option (1) was, indeed, the case. *Id.* at 12.

In finding that the parties intended to allow class disputes to be submitted to arbitration, Arbitrator Taren noted that he was required to rely solely on the plain language of the arbitration agreement. *Id.* He found that the arbitration agreement was incredibly broad in that the parties agreed to submit *any* dispute arising out of an employee's employment to arbitration. *Id*. The

arbitration agreement then listed as an example of such disputes actions for wages, which are permitted to be brought, and commonly are brought, as class or collective actions under the Fair Labor Standards Act, 29 U.S.C. § 216, and other state wage and hour laws.  *Id.* at 12-15. Arbitrator Taren concluded that Utilimap, as a sophisticated employer, knew that by agreeing to arbitrate wage disputes, it was agreeing to class arbitration of those disputes.  *Id.* at 14.  In support of this conclusion, Arbitrator Taren noted that Utilimap had superior bargaining power and could have inserted a waiver of class arbitration if it had not intended to agree to arbitrate class disputes, *id.* at 15, and that Utilimap knew when agreeing to the arbitration agreement that there was a high probability an employee would bring a wage dispute as a class action, *id.* at 16.

Arbitrator Taren then discussed how this conclusion is not overcome by other features of the arbitration agreement.  For example, he considered that singular, as opposed to plural, language in the arbitration agreement was because only a single employee signed the agreement and because a single employee still acts as an individual employee when bringing a class action on behalf of other employees, and not because the arbitration agreement was limited to arbitration of individual disputes, *id.* at 16-19.  He also found that the clause providing the arbitration must be conducted with sixty miles of the employee's residence at the time of his employment did not indicate an intent to limit the arbitration agreement to individual arbitration.  *Id.* at 19.  He noted that the clause could still have effect in class arbitration proceedings if individual arbitration hearings are necessary to determine individualized relief within the larger class arbitration.  *Id.* at 20.  Arbitrator Taren further found Utilimap's reference to the confidentiality of arbitration proceedings in its employee handbook, a document separate from the arbitration agreement, did not indicate an intent to preclude class arbitrations.  *Id.*  He also considered the requirement that the arbitrator be licensed to practice law in the state of the law applicable to the employee's dispute

and found that the provision did not indicate an agreement to preclude class arbitration, although it could have an effect on the scope of the class or the appropriate class representative. *Id.* Finally, Arbitrator Taren considered the provision limiting the employee's cost of the arbitration to a full day's wages to be more appropriate to individual arbitration, but found that it did not tip the scale in favor of finding the parties did not intend class arbitration. *Id.* at 21.

Arbitrator Taren also examined the case of *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016) (finding arbitration agreement that required employee to bring wage-and-hour claim through individual arbitration rather than class arbitration violated the National Labor Relations Act ("NLRA") and was therefore unenforceable), *pet. for cert. filed*, No. 16-285 (U.S. Sept. 2, 2016). He noted that if the arbitration agreement required arbitration but did not allow class arbitration, it would run afoul of the NLRA and would be unenforceable under the holding of *Lewis*. Arb. Award. at 22. He concluded, however, that it was not necessary to resort to interpreting the arbitration agreement to skirt the implications of *Lewis* because the parties had, in fact, agreed to class arbitration as explained earlier in the award. *Id.* at 23. He further stated, however, that if the parties had not intended to consent to class arbitration, he would exercise his authority to modify the arbitration agreement to allow for class arbitration to avoid being in violation of the NLRA. *Id.*

> Arbitrator Taren concluded:
>
> The Arbitration Agreements between Cipriano Martinez and Utilimap and between Patricia [*sic*] Dones and Utilimap were intended to and did encompass an agreement to submit to binding arbitration, "any claims, demands or actions based upon any claim for wages", including any class action wage claims and any collective action wage claims.

*Id.* at 24.

Utilimap argues that Arbitrator Taren's construction award exceeded his authority by

reaching the wrong conclusion about whether it agreed to class arbitration and by ignoring and not applying certain parts of the arbitration agreement such as, for example, the forum selection clause.

Utilimap argues nothing more than that Arbitrator Taren committed serious error and that his decision was incorrect. This is not a valid basis for vacating an arbitration award. *See Johnson Controls*, 712 F.3d at 1025. The Court believes Arbitrator Taren firmly grounded his construction award in the text of the arbitration agreement and, far from ignoring problematic aspects of that agreement, addressed the parts of the text that might counsel against his interpretation. Regardless of whether the Court agrees with Arbitrator Taren or whether it would have rendered the same or a different decision, the bottom line is that Arbitrator Taren construed the arbitration agreement, and his decision draws its essence from that agreement.

His conclusion does not represent "his own brand of industrial justice" like that of the arbitration panel in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010). In that case, the parties expressly made the unusual stipulation in arbitration that the parties had reached *no agreement whatsoever* about whether their arbitration agreement included class arbitration. *Id.* at 669. Nevertheless, arbitration panel found that class arbitration was permitted. *Id.* at 675. The Supreme Court overturned the arbitration panel's decision because the panel based its ruling on policy reasons in the absence of any contractual basis for finding the parties had agreed to class arbitration. *Id.* at 672, 676; *see Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2070 (2013) ("In *Stolt-Nielsen*, the arbitrators did not construe the parties' contract, and did not identify any agreement authorizing class proceedings. So in setting aside the arbitrators' decision, we found not that they had misinterpreted the contract, but that they had abandoned their interpretive role.").

In the case at bar, Arbitrator Taren did *not* have a stipulation from the parties that they had reached no agreement whatsoever about class arbitration like the parties in *Stolt-Nielsen* did, so he appropriately looked to agreement itself to glean the parties' intentions.  His analysis reflected a dutiful interpretation of the arbitration agreement, whether it be right or wrong, and did not exceed his authority.  *See Oxford Health Plans*, 133 S. Ct. at 2070 (§ 10(a)(4) of the FAA "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly").  Arbitrator Taren's interpretation is what the parties bargained for by entering into the agreement to have an arbitrator decide the question, and the Court will not frustrate those expectations by vacating his award.[2]

### III. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the plaintiffs' motion to confirm the arbitration clause construction award (Doc. 69);

- **CONFIRMS** the Partial Final Clause Construction Award issued by Arbitrator Jeffrey L. Taren on June 10, 2016, in AAA No. 01-15-0004-6935 (Doc. 69-1);

- **STAYS** this case until arbitration has been had in accordance with the terms of the arbitration agreement; and

- **ORDERS** Martinez and Dones to file a status report in March 2017, and every September and March thereafter until the arbitration is complete, and to file a final status report within 30 days of the completion of the arbitration.

**IT IS SO ORDERED.**
Date:   **November 21, 2016**

                                                      s/ J. Phil Gilbert
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**

---

[2] The only possible overreaching by Arbitrator Taren was his statement that he would have modified the arbitration agreement to allow class arbitration had he not found the parties had agreed to class arbitration.  This was an alternative basis for his ultimate conclusion, but since he did not rely on it, the Court need not consider whether it was within his authority to make such a modification.